Filed 4/14/22

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KASONDRA TORRES,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>ADVENTIST HEALTH SYSTEM/WEST et al.,<br><br>　　Defendants and Respondents. | F081415<br><br>(Super. Ct. No. 19C-0056)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County. Kathy Ciuffini, Judge.

Carpenter Law, Gretchen Carpenter; Law Office of Barry Kramer and Barry L. Kramer for Plaintiff and Appellant.

Boutin Jones, Michael E. Chase and Brian M. Taylor for Defendants and Respondents.

-ooOoo-

Kasondra Torres sued defendants Adventist Health System/West and Hanford Community Hospital (collectively, Hospital), for a violation of the Consumer Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.) and declaratory relief. Torres alleged Hospital engaged in a deceptive practice when it did not disclose its intent to charge her a

---

[*]　　Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

**SEE CONCURRING OPINION**

substantial emergency room evaluation and management services fee (EMS Fee).  In 2018, the five levels of Hospital's EMS Fees ranged from $773 to $3,206; the fee was added on top of the charges for each individual item of treatment and service provided during the emergency room visit.  Torres describes the EMS Fee as a "cover charge," surcharge for overhead, or visitation fee.

Hospital moved for judgment on the pleadings, which the trial court granted. Although Torres's pleading adequately alleges Hospital failed to disclose facts that were known exclusively by Hospital and were not reasonably accessible to Torres, we conclude Torres's conclusory allegation that she relied on the failure to disclose the EMS Fee and thereafter received treatment at the Hospital does not plead the element of reliance with sufficient particularity.  In the unpublished part of this opinion, we conclude Torres has not carried her burden of demonstrating the trial court erred when it denied her leave to file a third amended complaint.

We therefore affirm the judgment.

## FACTS

In January 2018, Torres received emergency treatment and services at Hospital's emergency room in Hanford.  The emergency room did not contain a posted notice or warning that a substantial EMS Fee would be added to Torres's bill on top of the individual charges for each item of treatment and services provided to her.  Hospital presents a "Conditions of Registration" form (the Contract) to all emergency care patients, or their agents, and requests that they sign the form.  A section of the form labeled "Financial Agreement" states in part:

> "I accept financial responsibility for all services during this episode of care. I understand that I can expect to receive separate bills from physicians and specialty services.  I agree to promptly pay all hospital bills in accordance with the regular rates and terms of the medical center and, if applicable, the medical center's charity care and discount payment policies under state and federal law."

2.

Hospital subsequently billed Torres a gross amount (before discounts) of $23,455.73 for the treatment and services provided. The summary billing statement sent to Torres did not identify or disclose the EMS Fee. Torres requested an itemized billing statement. It included a charge for $3,878.88 described as "EMERG ROOM' and another charge for $3,206.34 described as "ED LEVEL 5 89." Nothing in the itemized billing statement identified the "ED LEVEL 5 89" charge by its more formal description as an "Evaluation and Management Services Fee" or indicated it was added on top of the charges for individual items of treatment and services.

Hospitals are required by statute to make a copy of its "charge description master" available, either by posting an electronic copy on the hospital's Web site or by making a written or electronic copy available at the hospital. (Health & Saf. Code, § 1339.51, subd. (a)(1).)[1] " 'Charge description master' means a uniform schedule of charges represented by the hospital as its gross billed charge for a given service or item, regardless of payer type" (§ 1339.51, subd. (b)(1)) and is commonly referred to as a "chargemaster." Each year, hospitals must file a copy of their chargemaster with the Department of Health Care Access and Information formally known as the Office of Statewide Health Planning and Development (OSHPD), a department within the California Health and Human Services Agency. (§ 1339.55, subd. (a).) The OSHPD publishes the chargemasters on its Web site. (§ 1339.55, subd. (b).)

Hospital's June 2018 chargemaster contains five columns: (1) the item number, (2) "2018 Charge Codes," (3) "Charge Codes Description," (4) "HCPCS Codes,"[2] and (5) June 2018 prices. The "Charge Codes Description" for items 7771 through 7775 on the chargemaster are (1) "ED LEVEL 1/MSE," (2) "ED LEVEL 2 89," (3) "ED LEVEL

---

[1]     Subsequent unlabeled statutory references are to the Health and Safety Code.

[2]     "HCPCS stands for Healthcare Common Procedure Coding System." (42 C.F.R. § 510.2.)

3 89," (4) "ED LEVEL 4 89," and (5) "ED LEVEL 5 89."  The prices for these items are $773.12, $1,269.94, $1,914.59, $2,452.62, and $3,206.34, respectively.

Hospitals also are required by statute to compile and submit annually a list of 25 common outpatient procedures, along with the average charges for those procedures, to the OSHPD.  (§ 1339.56, subd. (a).)  The OSHPD is required to publish the information on its Web site.  (*Ibid.*)  The items numbered 7772 through 7775 on Hospital's June 2018 chargemaster, and the corresponding charges, appear on Hospital's "AB 1045 - List of 25 Common Outpatient Procedures for 2018," under the heading "Evaluation & Management Services (CPT Codes 99201-99499)."  The form describes the level 5 EMS Fee, which was the fee charged to Torres, as "high severity with significant threat."

CPT stands for "Current Procedural Terminology."  Hospitals use specific CPT codes required by the "Centers for Medicare and Medicaid Services" (CMS), a federal agency within the United States Department of Health and Human Services.[3]  The CPT codes for Hospital's EMS Fees are 99281, 99282, 99283, 99284, and 99285; the last digit refers to the level of service provided.

## PROCEEDINGS

In February 2019, Torres filed a class action complaint against Hospital containing causes of action for declaratory relief relating to the meaning of the Contract, a violation

---

[3]  "CPT codes are standardized five-digit numeric codes established by the American Medical Association.  They are used by healthcare providers to quickly describe to insurers the services for which the provider is billing."  (*People ex rel. State Farm Mutual Automobile Ins. Co. v. Rubin* (2021) 72 Cal.App.5th 753, 764; see *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2014) 232 Cal.App.4th 543, 550, fn. 5.)

According to an expert's declaration in *U.S. ex rel. Woodruff v. Hawaii Pacific Health* (D.Ha. 2008) 560 F.Supp.2d 998, " 'CPT codes have been incorporated to HCPCS as the first level of HCPCS codes.  HCPCS level II codes are established by [CMS] and are alpha numeric codes used for items such as supplies, durable medical equipment and drugs.' "  (*Id.* at p. 993, fn. 4.)

of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.), and a violation of the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.). Each of these causes of action challenged Hospital's imposition of the substantial, unexpected EMS Fee, which was not mentioned in the Contract, posted in the emergency rooms, or verbally disclosed to her during registration.

Hospital filed an answer followed by a motion for judgment on the pleadings. Hospital supported its motion with a request for judicial notice of documents publicly available on Web sites maintained by (1) the OSHPD; (2) the State Department of Health Care Services, another department of the California Health and Human Services Agency; and (3) CMS. The documents included a portion of Hospital's 2018 chargemaster that listed the five levels of EMS Fees and Hospital's list of 25 common outpatient procedures for 2018, both of which were available on the OSHPD's Web site.

In June 2019, the trial court took judicial notice of the documents published on the OSHPD's Web site and granted Hospital's motion for judgment on the pleadings with leave to amend.

Torres filed a first amended complaint again alleging causes of action for declaratory relief and for violation of the CLRA. The declaratory relief cause of action was no longer based on the rights and duties established by the Contract, but alleged Hospital owed a duty to disclose the existence and amount of the EMS Fee. The trial court sustained a demurrer with leave to amend.

In November 2019, Torres filed a second amended complaint (SAC), which is the operative pleading in this appeal. The SAC contained causes of action for declaratory relief and for violation of the CLRA. Its class action allegations asserted that the suit was brought on behalf of Torres and all other individuals who, from February 7, 2015, to the present, received treatment at Hospital's emergency room and were charged an EMS Fee having a CPT Code of 99281, 99282, 99283, 99284 or 99285.

5.

The SAC's allegations applicable to both causes of action asserted that it would be simple for Hospital to disclose its intent to charge a substantial EMS Fee and that Hospital had ample opportunities to make such a disclosure. As examples, the SAC alleged the EMS Fee could be disclosed in signage in or around the emergency room or could be disclosed to patients verbally or by any other means. The declaratory relief cause of action alleged that Hospital owed a duty to specifically disclose the existence and amounts of the EMS Fee charged to emergency room patients in advance of providing treatment that would trigger such a fee and sought a legal determination that such a duty existed. The CLRA cause of action alleged Hospital's practices relating to the disclosure and billing of EMS Fees violated paragraphs (5) and (14) of subdivision (a) of Civil Code section 1770 and sought injunctive relief. The declaratory relief cause of action was not based on the rights and duties established by the Contract.

Hospital answered the SAC and moved for judgment on the pleadings. Hospital supported its motion with a request for judicial notice of materials available on the OSHPD's Web site, publications issued by CMS, and legislative history for Assembly Bill No. 1627 (2003-2004 Reg. Sess.). Assembly Bill No. 1627 contained the Payers' Bill of Rights (§§ 1339.50–1339.59) and required, among other things, hospitals to make their chargemasters available to patients and to submit them to the OSHPD. (See §§ 1339.51, 1339.55.)

In January 2020, the trial court held a hearing on the motion for judgment on the pleadings and took the matter under submission. In April 2020, the court filed its ruling granting the motion without leave to amend.

In May 2020, the trial court filed a judgment in favor of Hospital. Torres timely appealed.

**DISCUSSION**

## I.    DUTY TO DISCLOSE EMS FEES

### A.    Standard of Review

The following principles of appellate review apply to this case. An order granting a motion for judgment on the pleadings for failing to state facts sufficient to constitute a cause of action is reviewed on appeal under the same rules that govern an order sustaining a general demurrer. An appellate court's task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any legal theory. Determining whether a pleading alleges facts sufficient to state a cause of action is a question of law and, therefore, appellate courts are obligated to independently determine the sufficiency of a pleading's allegations without deference to the trial court's conclusions. When interpreting a pleading, appellate courts (1) treat the properly pleaded allegations as true, (2) consider those matters subject to judicial notice, and (3) liberally construe the allegations with a view to attaining substantial justice among the parties. (*Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1019.)

The foregoing principles raise the question of how one properly pleads the facts necessary to state a violation of the CLRA based on a failure to disclose a material fact. In *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234 (*Gutierrez*), this court discussed earlier cases and concluded that a cause of action under the CLRA "must be stated with reasonable particularity, which is a more lenient pleading standard than is applied to common law fraud claims." (*Gutierrez*, at p. 1261.)

### B.    Contentions

Torres's opposition to Hospital's motion for judgment on the pleading stated this lawsuit "revolves around a simple question of fundamental fairness: Does an emergency room patient have a right to be informed, prior to treatment, that in obtaining medical treatment, services, or diagnostic testing at one of Defendants' … emergency rooms, he

or she will automatically be billed a very substantial and intentionally concealed 'emergency room evaluation and management fee'[?]" Torres asserts the flip side of a patient's right to know or to be informed is the Hospital's duty to disclose such fees before they are incurred. Torres contends that, based on the facts alleged in the SAC, there is a clear and well-defined duty to disclose the surprise EMS Fees under both common law and the CLRA.

In response, Hospital contends that the Legislature has regulated hospital pricing disclosures and policies, that Hospital has complied with those enactments, and that the CLRA does not require it to make the more extensive disclosures sought by Torres. Thus, Hospital contends the SAC fails to state a cause of action because both the CLRA claim and the declaratory relief claim are based on a nonexistent duty to disclose.

### C. CLRA and Duties to Disclose

Torres's contention that the SAC adequately alleged a violation of the CLRA is based on paragraphs (5) and (14) of subdivision (a) of Civil Code section 1770. That subdivision provides in part:

> "The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful: [¶] … [¶]
>
> "(4) Using deceptive representations … in connection with goods or services.
>
> "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have. [¶] … [¶]
>
> "(14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." (Civ. Code, § 1770, subd. (a).)

8.

Torres refers to this court's decision in *Gutierrez*, *supra*, 19 Cal.App.5th 1234, which set forth the principles that (1) a failure to disclose material facts can be actionable under the CRLA; (2) not every omission or nondisclosure is actionable; and (3) in general terms, an omission is actionable under the statute if the omitted fact (a) is contrary to a material representation actually made by the defendant or (b) is a fact the defendant was obligated to disclose. (*Gutierrez*, *supra*, at p. 1258.) In *Gutierrez*, the issue presented was whether the defendant was obligated to disclose (i.e., had a duty to disclose) a fact not known to the plaintiff. (*Ibid.*) Similarly, this appeal raises the issue of whether Hospital had a duty to disclose information about its EMS Fee to Torres.

In *Gutierrez*, we stated prior case law had recognized four situations where a failure to disclose a material fact constituted a deceptive practice actionable under the CLRA: (1) the defendant has a fiduciary relationship with the plaintiff; (2) "the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff"; (3) the defendant actively conceals a material fact; and (4) " 'the defendant makes partial representations that are misleading because some other material fact has not been disclosed.' " (*Gutierrez*, *supra*, 19 Cal.App.5th at p. 1258.) In this appeal, Torres bases the alleged duty to disclose on the exclusive knowledge and the active concealment criteria. These differ from the grounds for the duty to disclose that was pleaded in *Gutierrez*. (*Id*. at pp. 1262–1263 [duty to disclose information to prevent partial representations from being misleading].)

D.      Trial Court's Decision

In granting Hospital's motion for judgment on the pleadings, the trial court noted that the exact amount of an EMS Fee cannot be determined until after the patient is evaluated and, therefore, section 1339.585 does not require hospitals to provide an estimate of the cost of treatment at an emergency room. The court stated that the Legislature has spoken as to the disclosure requirements for hospital charges and fees

9.

(§ 1339.51); Torres conceded she is not alleging Hospital failed to comply with the statute; and Torres argued the description of the EMS Fees in the chargemaster was not adequate. On this issue of a more specific disclosure, the court stated that the Legislature has not required a common language description of the EMS Fees incurred by a patient after treatment in an emergency room; greater transparency for hospital charges was a matter for the Legislature; any person may file a claim under section 1339.54 with the Department of Public Health alleging a violation of the Payers' Bill of Rights; and the court in *Nolte v. Cedars-Sinai Center* (2015) 236 Cal.App.4th 1401, determined a facility fee, which was similar to Hospital's EMS Fee, did not need to be disclosed to a patient before treatment.

The trial court concluded Torres had not alleged facts sufficient to state a cause of action for declaratory relief or for a violation of the CLRA. The court also cited a case concluding that to plead a cause of action under the CLRA, a plaintiff must allege a deceptive practice and that the deception caused the plaintiff harm. (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1367 (*Durell*); see Civ. Code, § 1780, subd. (a).) *Durell* refers to the need to allege the plaintiff relied on the misrepresentation, a term that would include a material omission where the defendant has a duty to disclose.

E.    Exclusive Knowledge and Reasonable Access

We first consider whether Torres adequately alleged a breach of a duty to disclose a material fact based on Hospital's exclusive knowledge and her lack of reasonable access to the material facts.

1.    *Facts Known Exclusively by Hospital*

The SAC alleged Hospital owed "a duty to specifically disclose the existence of and amounts of [the EMS Fee] to emergency room patients in advance of providing treatment that would trigger" imposition of the fee. Expanding on the allegation about the *existence* of the EMS Fee, the SAC alleged the EMS Fee charged to emergency room

10.

patients is "set at one of five levels determined after discharge" and "is based on an internally developed formula known exclusively to" Hospital. (SAC ¶ 11.) The SAC also alleged Hospital "had exclusive knowledge that [it] would be billing" Torres and putative class members an EMS Fee. (SAC ¶ 36.) Our analysis of the contents of the SAC leads us to conclude that it alleges Hospital knows of the following separate but related facts: (1) an EMS Fee exists, (2) the events that trigger Hospital's imposition of an EMS Fee, (3) the EMS Fee has 5 levels, (4) Hospital uses an internal formula to determine which of the five levels of EMS Fees is imposed on a particular patient, and (5) each level of EMS Fee is assigned a specific amount and, as a result, the determination of the level of the fee effectively determines its amount.

### 2. Torres's Knowledge of the Facts

Having identified the particular facts Hospital is alleged to have known, we next consider the allegations addressing Torres's actual knowledge of those facts before examining whether those facts were "reasonably accessible to" Torres. (*Gutierrez, supra*, 19 Cal.App.5th at p. 1258.)

The SAC alleged that Torres "was shocked when she found out that she had been charged an [EMS Fee] in addition to all the individual items of treatment and services as a result of merely being seen in [Hospital's] emergency room" and that she was not expecting to be billed an EMS Fee at the time she sought treatment. (SAC ¶¶ 20 & 35.) More directly, the SAC alleged that Hospital had exclusive knowledge that it would be billing Torres an EMS Fee and this fact was not known by Torres. (SAC ¶ 36.)

We conclude that the SAC has adequately alleged that Torres did not know an EMS Fee existed, did not know the events that triggered its imposition, did not know there were five levels of EMS Fees, did not know the formula used to determine which level of fee to impose on an emergency room patient, did not know the amount charged for each fee level, and did not know she would be billed an EMS Fee.

11.

### 3. Reasonable Access to the Facts

The SAC also alleged the fact that Hospital intended to bill Torres an EMS Fee in connection with the emergency care provided was not "reasonably accessible to" her at the time of her emergency room visit. (SAC ¶ 36.) We conclude whether reasonable access existed is determined by applying the reasonable person standard, an objective test, to the circumstances of the case because reasonableness is generally regarded as imposing an objective standard. (E.g., *Powell v. Tagami* (2018) 26 Cal.App.5th 219, 234 [reasonable cause requirement in Probate Code is evaluated under an objective standard of what any reasonable person would have done]; *Monarch v. Southern Pacific Transportation Co.* (1999) 70 Cal.App.4th 1197, 1203 [the delayed discovery rule for the start of a statute of limitations is an objective test asking whether the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and causation].) In addition, we conclude the issue of reasonable access is generally a question of fact that can be decided as a matter of law only if the evidence (or facts accepted as true for pleading purposes) can support only one reasonable conclusion. (See *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 193 [allegations failed as a matter of law to trigger the delayed discovery rule because allegations showed plaintiff did not exercise reasonable diligence; demurrer upheld].)

In this case, Hospital responds to Torres's allegation about the lack of reasonable access by referring to the Payers' Bill of Rights and its requirement that a California hospital "shall post a clear and conspicuous notice in its emergency department" that its chargemaster "is available in the manner described in subdivision (a)." (§ 1339.51, subd. (c).) Under the statute, the methods for making the chargemaster available are posting it on the hospital's Web site or providing a written or electronic copy at the hospital itself. (§ 1339.51, subd. (a)(1).) Hospitals also are required to file a copy of their chargemaster annually with the OSHPD. (§ 1339.55, subd. (a).) Hospitals also must annually compile

a list of 25 common outpatient procedures and submit that list, along with its average charges for those procedures, to the OSHPD. (§ 1339.56, subd. (a).)

With this statutory foundation, Hospital refers to matters judicially noticed by the trial court—specifically, its chargemaster and its list of 25 common outpatient procedures for 2018. Four of the five levels of EMS Fees appear on the list under the heading "Evaluation & Management Services (CPT Codes 99201-99499)." Hospital contends it complied with the statutory disclosure standards, implying that Torres, as a matter of law, had reasonable access to the material facts about its EMS Fee.

The SAC addresses the information posted online by alleging Hospital's chargemaster was "unusable and effectively worthless for the purpose of providing pricing information to consumers"; the chargemaster failed to include the standardized CPT codes recognized in the industry; and the chargemaster used coding and highly abbreviated descriptions that are meaningless to consumers. (SAC ¶ 37.) Accordingly, the SAC further alleges that the chargemaster was meaningless for purposes of pricing transparency. In effect, Torres contends these allegations are sufficient to allege the material facts were not *reasonably* accessible and the factual question of reasonable access cannot be resolved at the pleading stage.

Based on the SAC's allegations, which we accept as true for purposes of the motion for judgment on the pleadings, and the content of the documents judicially noticed, we conclude Torres has stated facts sufficient to plead a lack of reasonable access to (1) the facts that trigger Hospital's imposition of an EMS Fee and (2) the formula used to determine which level of EMS Fee to impose on an emergency room patient. In short, we cannot conclude as a matter of law that an objectively reasonable person who reviewed Hospital's chargemaster and its form of 25 common outpatient procedures could discern the circumstances in which the EMS Fee is charged or how the amount of the EMS Fee is determined.

13.

We note that this interpretation of the SAC does not contradict the conclusions reached in *Gray v. Dignity Health* (2021) 70 Cal.App.5th 225 or *Nolte v. Cedars-Sinai Medical Center, supra,* 236 Cal.App.4th 1401 because neither of those decisions addressed whether the hospital had a duty to disclose based on its exclusive knowledge of material facts. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 ["an opinion is not authority for a proposition not therein considered"].) As a result, neither decision explicitly addressed the patient's lack of reasonable access of a material fact. Therefore, they did not establish that a disclosure of the price charged for a service also discloses the circumstances in which the charge is imposed.

### 4. Materiality, Causation and Reliance

As mentioned earlier, the failure to disclose *material* facts may be actionable under the CLRA in certain situations. (*Gutierrez, supra*, 19 Cal.App.5th at p. 1258.) For purposes of the CLRA, "a fact is 'material' if a reasonable consumer would deem it important in determining how to act in the transaction at issue." (*Gutierrez, supra*, at p. 1258.) The concept of materiality is related to the issue of causation. A causal link between the deceptive practice and damage to the plaintiff is a necessary element of a CLRA cause of action. (*Durell, supra*, 183 Cal.App.4th at pp. 1366–1367.) A misrepresentation or an omission of fact is material only if the plaintiff relied on it—that is, the plaintiff would not have acted as he or she did without the misrepresentation or the omission of fact. (*Id.* at p. 1367.)

The SAC addressed materiality and reliance by alleging that, when Torres sought treatment, she "was not expecting to be billed, and relied on not being billed, a substantial, unreasonable [EMS Fee] that was not described, posted, or mentioned to her." (SAC ¶ 35.) More generally, the SAC alleged that knowledge of the EMS Fee would be a material factor in a patient's decision to remain at Hospital's emergency room to obtain treatment and services. Restating this point, the SAC alleged "that a reasonable

14.

consumer would deem the fact that he or she would be billed a substantial, unreasonable Overhead Charge to be an important factor in determining whether or not to remain and obtain treatment at the hospital." (SAC ¶ 36.)

First, we conclude the allegation that Torres "relied on not being billed" an EMS Fee, standing alone, is not sufficient to properly plead reliance for purposes of alleging a claim under the CLRA based on a failure to disclose a material fact. A cause of action under the CLRA must be stated with reasonable particularity. (*Gutierrez*, *supra*, 19 Cal.App.5th at p. 1261.) In *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, our Supreme Court recognized that it is possible to prove reliance on an omission by proving "that, had the omitted information been disclosed, one would have been aware of it and behaved differently." (*Id*. at p. 1093.) The use of "one" in this statement refers to the plaintiff. Accordingly, we conclude that for a plaintiff to adequately plead reliance, the plaintiff must allege and prove that he or she would have behaved differently if the information had been disclosed. Here, the SAC's allegations about the importance patients in general would place on information about Hospital's EMS Fee in deciding whether to remain and obtain treatment does not address whether Torres would have behaved differently—that is, would have obtained treatment elsewhere.

Second, we conclude that, reading the SAC and judicially noticed materials as a whole, it is not reasonable to infer that Torres would have behaved differently by seeking treatment elsewhere. (See *Neilson v. City of California* (2005) 133 Cal.App.4th 1296, 1305 [in determining whether pleading states a cause of action, court assumes the truth of all facts that reasonably may be inferred from the facts properly pleaded or judicially noticed].) The SAC alleges that Torres was charged $3,206.34 for "ED LEVEL 5 89." This amount and description correspond to the EMS Fees described in the list of 25 common outpatient procedures as "high severity with significant threat." Therefore, without more particular facts alleged, it is reasonable to infer that Torres suffered severe injuries that posed a significant threat based on these facts. In turn, it is not reasonable to

15.

infer Torres would have obtained treatment elsewhere if the facts about the existence, imposition and amount of the EMS Fee had been disclosed.

F. Active Concealment

Torres also has failed to allege a cause of action under the CLRA or common law based on a duty to disclose information that was actively concealed by Hospital because her allegations of reliance are insufficient. In addition, her conclusory allegation that Hospital actively concealed its intention to bill her an EMS Fee is insufficient to plead active concealment with the requisite particularity. (See *Gutierrez, supra*, 19 Cal.App.5th at p. 1261 [CLRA claim must be stated with reasonable particularity].) We conclude that to adequately plead active concealment, a plaintiff must set forth acts performed by the defendants that concealed information from the plaintiff. A failure to disclose information is an omission, not an affirmative act. Here, the SAC does not describe any acts undertaken by Hospital to conceal the EMS Fee from Torres. For instance, it does not allege Hospital refused to answer questions about its emergency room charges.

In summary, Torres has failed to allege facts sufficient to plead Hospital breached a duty to disclose material facts. As a result, Torres has not stated a cause of action under the CLRA or for declaratory relief.

II. LEAVE TO AMEND[*]

A. Standard of Review

Torres contends that because the standards of review for a motion for judgment on the pleadings are the same as applied to a demurrer, the issue of whether amendment should be permitted is open on appeal. Torres cites Code of Civil Procedure section 472c, subdivision (a), which states: "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its

---

[*] See footnote, *ante,* page 1.

16.

discretion in making such an order is open on appeal even though no request to amend such pleading was made."  Torres also cites *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, which involved a demurrer, for the principle that "[t]he issue of leave to amend is always open on appeal, even if not raised by the plaintiff."  (*Id*. at pp. 746–747; see *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132 [plaintiff may meet burden of demonstrating an amendment would cure a pleading's legal defect for the first time on appeal].)

We assume for purposes of this appeal that the principle stating leave to amend is always open on appeal extends to motions for judgment on the pleadings.  (See *Foster v. Sexton*, *supra*, 61 Cal.App.5th at p. 1025.)  Accordingly, leave to amend should be granted if "there is a reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  The plaintiff has the burden of demonstrating a reasonable possibility of curing the defect.  (*Ibid*.)

" 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading."  [Citation.] ...  The plaintiff must clearly and specifically set forth ... factual allegations that sufficiently state all required elements of that cause of action.  [Citations.] Allegations must be factual and specific, not vague or conclusionary.  [Citation.]' [Citation.]"  (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491.)

B.      A Cure of Defects Has Not Been Demonstrated

As explained below, we conclude Torres has not carried her burden of demonstrating the defects in the SAC could be cured if she was given another chance to amend.

With respect to Torres's claims based on a duty to disclose, her appellate briefs do not represent that she could allege facts sufficient to properly plead her *reliance* on the alleged failure to disclose material facts.  In particular, she does not represent that she

17.

could plead and prove that she would have gone elsewhere for treatment if the EMS Fee had been disclosed to her. As a result, she has not demonstrated she could cure the defect in her claims alleging a breach of a duty to disclose. When the failure to plead reasonable reliance with sufficient particularity was raised during oral argument, her attorney argued reliance was not an element of a CLRA claim alleging a breach of a duty to disclose. We reject that argument for the reasons set forth in part I.E.4., *ante*.

Next, we consider the possibility of Torres amending to allege a claim for breach of contract. The declaratory relief cause of action in Torres's original complaint was based on the Contract. The Contract stated that the patient agrees to pay "all hospital bills in accordance with the regular rates and terms of the medical center." The Contract, insofar as its terms are part of the appellate record, does not mention the EMS Fee charged by Hospital. The trial court considered the allegations in the original complaint and granted a motion for judgment on the pleadings with leave to amend. Torres did not appeal the order and, when she filed her first amended complaint, she no longer based the declaratory relief cause of action on the terms of the Contract and did not separately allege the Contract had been breached. Similarly, Torres's SAC did not allege a cause of action based on the Contract.

In Torres's appeal from the trial court's determination that her SAC did not state a cause of action, her opening and reply briefs did not assert she could amend to state a cause of action for breach of contract. She first raised the possibility in a letter addressing *Gray v. Dignity Health*, *supra*, 70 Cal.App.5th 225, which letter was submitted after briefing was complete. Although this court recognizes the principle that leave to amend may be raised for the first time on appeal, the failure to raise it in the opening or reply brief and make the specific showing required by *Rossberg v. Bank of America, N.A.*, *supra*, 219 Cal.App.4th 1481—particularly where the legal theory was rejected by the trial court and abandoned by Torres in subsequent amended pleadings— leads to the conclusion that Torres has failed to carry the burden of demonstrating that an

amended pleading could state a cause of action under a breach of contract theory.[4]  (See generally, *Otworth v. Southern Pacific Transportation Co.* (1985) 166 Cal.App.3d 452, 458–459 [pleading a cause of action for breach of contract].)

Consequently, we conclude the trial court properly denied leave to amend.

## DISPOSITION

The judgment is affirmed.  Pursuant to California Rules of Court, rule 8.276, the parties shall bear their own costs on appeal.

FRANSON, J.

I CONCUR:


DE SANTOS, J.

---

[4]     In addition, we note that none of the headings in Torres's opening brief address leave to amend.  (See Cal. Rules of Court, rule 8.204(a)(1)(B) [each appellate brief must state each point under a separate heading or subheading].)  Generally, an appellant's failure to provide proper headings forfeits an issue that may be discussed in the brief but is not clearly stated in a heading.  (*Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 547; *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.)

POOCHIGIAN, Acting P. J., concurring.

The resolution of plaintiff's claims under the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.)[1] (CLRA) is unnecessarily complicated by the extra-statutory expansion of omission-based liability under the CLRA by cases like *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1268 (*Gutierrez*). I would reject the CLRA claims pursuant to the plain language of the statute.

In section 1770, the CLRA enumerates unfair methods, acts and practices that give rise to liability. "Most of the categories involve affirmative misrepresentations (including those at issue here)."[2] (*Gutierrez*, *supra*, 19 Cal.App.5th at p. 1268 (conc. & dis. opn. of Poochigian, J.).)

Section 1770, subdivision (a)(5) prohibits " '[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have ….' " (*Gutierrez*, *supra*, 19 Cal.App.5th at p. 1267 (conc. & dis. opn. of Poochigian, J.).) The plain meaning of this provision is simple: "You cannot lie about or misstate the listed aspects of a good, service, or person." (*Ibid.*)

Plaintiff has not identified any representations Adventist Health System/West and Hanford Community Hospital (collectively, "Hospital") made about its goods or services that were inaccurate. Instead, plaintiff contends Hospital's acts and practices "constitute omissions/concealments" that violate subdivision (a)(5). But subdivision (a)(5) does not address omissions, it involves representations.

Section 1770, subdivision (a)(14) offers no help to plaintiff for similar reasons. That provision prohibits "[r]epresenting that a transaction … involves … obligations that it does not have or involve, or that are prohibited by law." Again, this language is clear:

---

[1] All further statutory references are to the Civil Code unless otherwise noted.

[2] The CLRA can also apply to certain enumerated instances of omission-based liability. (See § 1770, subds. (a)(10)–(12), (20), (22).) None of them are applicable here.

You cannot say that a transaction involves a particular obligation when, in fact, it does not involve such an obligation. Plaintiff contends that Hospital *failed to represent* that the transaction involved a particular obligation (i.e., the emergency room evaluation and management services fee); rather than *representing* that the transaction involved an obligation that it did *not* involve (i.e., the conduct prohibited by § 1770, subd. (a)(14)).

Because the alleged conduct by Hospital does not violate the plain language of section 1770, subdivisions (a)(5) and (a)(14), plaintiff's CLRA claims are meritless. Only by reading omission liability into subdivisions (a)(5) and (a)(14) where none exists does this issue become more complicated. I would simply rely on the plain language of the statutory provisions at issue.

For these reasons, I concur in the judgment.


POOCHIGIAN, Acting P. J.

2.